Good afternoon, and may it please the court. My name is Glenn Cantor, and I represent Yvette Williby, the appellant in this action. I'd like to save five minutes of my time for rebuttal. You'll have to help keep track of your time. Thank you, Your Honor. I will. The procedural history of this case can only be described as a quagmire. However, at this point, there is truly one overarching issue which is before this court. And that issue is, was Ms. Williby deprived of her right to a de novo review of her long-term disability benefits? Counsel, the problem I have with your argument, and I'll just lay it on the table at the beginning, it appears to me that that was not the theory that was argued to the district court in this case, as distinct from the other one. It appeared to me that you argued all along that because you're entitled to short-term disability benefits, you therefore also were entitled or she was entitled to long-term disability benefits. But this bifurcated standard of review seems to me to be a new argument.  Well, Your Honor, first, I was not involved at the district court. Well, it doesn't matter who was involved, Counsel, and we're here on the record that is. Yes, I understand. The transcript of that case, the court discusses both the short-term and the long-term, and the court, to some extent, discussed obliquely what would happen if she ruled for the plaintiff or what would happen if she ruled for the defendant. And what was argued was that if she ruled for the plaintiff, the definition of a disability for the short-term and the long-term were the same. So if she ruled for the plaintiff under the short-term, then it would naturally run into the long-term. Well, that made sense when the two were under the same standard of review, either both de novo or both abuse of discretion. But as I understand it, the current argument before us is short-term disability is reviewed for abuse of discretion, but long-term disability is reviewed de novo. And it's that argument that I didn't see made below. And I would concede, it was not made below. It was never addressed. So what should we do with that? I mean, we have discretion to reach it, but why should we reach it in this instance? Well, I think primarily that this court in Orszagowski mandated that de novo review be applied to long-term disability benefits. It was a published decision. It is the law of this circuit. I think it should have been applied by the court, but it was not. It was just ignored by the court. But it wasn't argued, counsel. That's what my colleague Judge Graber is saying. I mean, once it was sent back down, right, is there an argument that's preserved that says the district court should have then engaged in a separate analysis and that your client would be entitled to, even if she lost on a short-term disability benefits claim because of the different standard, she'd be entitled to be successful on a long-term disability benefits claim because of the different standard? And that that was not, it does not appear to be argued on remand, was it? No, Your Honor, it probably was not argued on remand. And however, I think equity and justice require that it be considered and it be argued. I think it would be just a travesty of justice to say that because the court focused on the short-term at the trial, the court focused on what it would do with the short-term. It was never broached. It was never argued by any party. How did the district court dispose of the long-term claim? That's an excellent point, Your Honor. The court did not dispose the long-term. It said nothing about it. Long-term... Did you do judgment dismissing the case and therefore all the claims? It obviously knew it had that and it discussed what happened to it. Your Honor, nothing happened to it. What, as the court may be aware from the case that was taken off calendar, when I became involved, we filed a second lawsuit just for that issue because the court, in what we would call Will v. One, never addressed the long-term in her decision. It was addressed at oral argument. One reading is that what she did was having ruled against on short-term, she concluded that that was preclusive on the long-term disability. Is that how you would read this? I don't think the court even thought about long-term, which was made evident by the court's subsequent ruling that in order to be entitled or eligible for long-term, you had to be awarded the full short-term disability benefit, which in our papers we demonstrate by the plan language is not true. The plan contemplates two separate plans. In fact, I'd like to reference the argument that was made at the first Will v. argument before this court where Edna's lawyer stated, my guess is that under the long-term disability plan, insurance code would apply to that and void the discretionary language, but we're not dealing with that. We're dealing with the short-term disability plan. So even Edna, at the time of the first Will v. argument, conceded that de novo would apply to the long-term benefits. Where the court decided that you had to obtain short-term to obtain long-term, I don't know, because the plan states exactly the opposite. But you acknowledge, counsel, that the court issued a judgment disposing of the entire case and that in the case, the decision on both short-term and long-term disability benefits had been challenged, correct? Yes, I concede that there was a judgment on the entire case and the long-term denial was challenged. However, we are now before this court and we also challenge the short-term denial and the basis of the short-term denial. So whether or not the court decides to take up the long-term issue it certainly, I would think, needs to take up the abuse of discretion decision and the fact that unfettered discretion was given to Edna and its short-term denial despite the fact that it was clearly a conflicted administrator. We understand that typically it's the law of the case. The Ninth Circuit has made clear that there are circumstances where it would change. One of them is manifest injustice. I think that applies here in this case. In that, at the time, from the quote I just gave you Edna was saying to the court, yeah, we accept the fact that the long-term would be de novo. Now it's come before the court and said, no, no, no, we think the short-term is dispositive. Edna, if they're going to argue that the short-term is dispositive has every reason to look not to pay that short-term claim. It's basically 26 weeks of short-term which is the tail wagging 20 years of long-term benefits. Counsel, I noticed in the docket information that there was an unsuccessful effort to mediate or to use our mediation services early in the life of this appeal. Is that something that your client would be open to at this time? I'm sure she would, Your Honor. I honestly, I'm not sure how to take the court's question because I emphatically and just very strongly believe that there was an abuse of discretion in the decision to deny the short-term and that this court should take up the issue. You have two cases. You have the Willoughby case which deals with the short-term. You have the Orzechowski case which deals with the long-term. And I believe that a published decision is required to harmonize those two cases. We think in our moving papers we've done it quite well. We think if Edna had any serious contention that de novo didn't apply to the long-term it would have discussed either the California Insurance Code statute or Orzechowski, it would have discussed the planned terms. It does none of those things. Now, a mediation, we did a mediation. Would another one be more successful? I don't know. However, I truly believe that equity and justice require that this court take up the issue of whether de novo review should have been applied. I'd remind the court that when the district court first ruled in 2015, the court ruled that the short-term disability benefits were reviewed de novo, that was error. The court also ruled that the appellant had met the elimination period under a de novo standard. I understand that decision was vacated, but that was a ruling the court made that the court never changed. No court has ever looked at the merits and said anything but that Ms. Willoughby had met the elimination period for the short-term benefits. Excuse me. Had met the elimination period for the long-term benefits. You're down to about four and a half minutes if you'd like to reserve your time. I would, Your Honor. Thank you. And we'll hear now from Mr. Fowlers. Good afternoon. May it please the court. I'm Ronald Alberts, appearing on behalf of Aetna. I think the issue that was raised by Your Honor at the outset is the issue that I think is the proper focus for looking at this appeal in Willoughby 1. That is whether or not these issues were raised before the trial court at any time in any of the briefing. And the answer is they were not. This is a novel theory. Counsel, just as Aetna has some discretion to exercise in some circumstances, so do we. And we have the discretion to consider this issue, even though it was not fleshed out in the district court. It's been briefed here, and it's the elephant in the room. And the case law seems to distinguish between those things that are self-funded and those that are not. And speaking only for myself, it does appear to me that the long-term disability is to be reviewed de novo and not under an abusive discretion standard. So why shouldn't we just save that in this case? Well, again, while the court does have that discretion, I don't believe that there is a proper rationale or support to ignore the fact that Judge Marshall never had any of these arguments before her. And it's not as if this case wasn't briefed. But, counsel, we have de novo review of what she did. So we have the opportunity to look at this if we so choose. And I'm sort of asking the equitable question now as to why we should not exercise our discretion to look at this issue. Sure. I think if we look at the exhaustive briefing of the medical reviews and the claim-sandling, it's clear that we will not have a different outcome here. While I understand what you're talking about. Excuse me, counsel. Oh, I'm sorry. Go ahead, Judge Boulware. Well, first of all, in the first case, there was de novo review, and Judge Marshall reached a different outcome at first. So I don't know that it's clear at all to me that that's what the outcome would be. And secondly, I do want to emphasize the fact that Judge – I also understand Judge Graber's question to be about whether or not we should be reviewing de novo, the proper application of the standard. This isn't just a factual question. There's also the question of whether or not the proper standard was applied. And I also think that de novo review should have applied it. And why wouldn't we then apply it if it's a question of the proper standard, which is a legal question? Why would we allow for a decision then to be affirmed where essentially we're allowing for the improper legal standard to have been applied in the judgment? Well, I think this is a – I think it's a good question. I think I know where you're coming from, and I don't disagree with all of the legal arguments that you're raising. But what I think is important to look at is procedurally we have two different cases. And if you look at Willoughby 2, that we're not arguing, but if you look at Willoughby 2 and you see what happened, the court determined that the arguments regarding the long-term disability benefits were never properly before it. And when plaintiff brought the second lawsuit, they were time-barred from doing so. Well, they may or may not have been time-barred, but the point of that case is you can't do it twice. And the once is this case. So why shouldn't we reach it here in this case? Because the long-term disability benefits weren't before the court in this case. If you look at – They clearly were part of the case when it went up on appeal, and then when it came back down, she says nothing about them in her – you know, in the findings she then makes. But then she enters a judgment, which she can only do if she's disposed of all of the cases, all of the claims before her. So something – we have to read that as having disposed somehow of a long-term disability. What happened to them? Well, I don't think she actually was disposing of the long-term disability benefits. Is that an error? In her judgment on Willoughby 1. Well, isn't that an error? It's not mentioned in the order, and there are very, very brief references only in the argument, only in oral argument, to the long-term disability benefits. It's not in the complaint. Counsel, I don't know if you heard my colleague's question. I think the follow-up question was, is that an error that it wasn't mentioned? And no, I don't believe it's not an error because I don't believe it was actually properly before the court. I think all that was being litigated was the short-term disability benefits in Willoughby 1. And the court made a – the court said in the findings of fact, the only mention, in fact, in the entire – in anything written by Judge Marshall about the long-term disability is in the recitation of the facts at the very end of the facts where she mentions that and Aetna also determined that the – I don't have it exactly, but anyway, something that Aetna also mentioned that the long-term disability time had not – that period had not run. Why wouldn't we interpret that, counsel, as her accepting Aetna's argument, essentially, that in order to qualify for the long-term disability benefits, you had to exhaust the short-term disability benefits? Why wouldn't we interpret her conclusion simply as accepting the rationale that you all offered? Well, we weren't arguing the long-term disability benefits in Willoughby 1. Well, but they came – well, that's part of the issue, right? That's part of the issue I think that my colleague Judge Collins raised, which is that they started off in the case. There's no doubt about the fact that they were – that the denial of long-term disability benefits was challenged in the original case. And I think what we're talking about is what the judgment means, but I don't think there's any dispute about the fact that the case was initially brought – challenged the decision on both short-term and long-term disability benefits, correct? Respectfully, no. What? Okay. Respectfully, no. The original complaint does not mention any claim for long-term disability benefits. It is only seeking the short-term disability benefits. It is – the way all of this comes to a head is that after Judge Marshall ruled on Willoughby 1, that we're arguing now, plaintiffs, a month or two later, brought a second complaint. I don't see how you can say what you just said when the first set of findings of fact and conclusions of law ends with the statement that defendant improperly denied plaintiff's claim for short-term and long-term disability benefits. They were clearly in the case. Where are you reading this from? I'm reading from Excerpt of Record 116, the conclusion of the first set of findings of fact that went up and were the subject of the first published Ninth Circuit opinion. They were in the case. It then came back down. She then only discussed the short-term disability, and the only reference to the long-term is on ER 71, where she references Edna's position that you had to have the full period of short-term disability to get long-term disability. So that supports, I think, Judge Boulware's suggestion that she was agreeing with that position, which is error. Thank you. ...was incorrect. She did add a footnote stating that she wasn't going to go further and make findings regarding eligibility for long-term disability benefits. Right. I think that supports what I'm trying to say here, that Willoughby 1 solely dealt with the short-term disability benefit issue, and Willoughby 2 is the first time when there's really a discussion of the long-term disability issue, and where Judge Marshall does say in Willoughby 2 that race judicata should apply to bar the second lawsuit implying, obviously, that she had ruled on the long-term disability benefit. But it doesn't say that in Willoughby 1. Well, so, Counselor, why wouldn't we accept the fact that she issued a decision, a judgment that involved long-term disability benefits, that perhaps she didn't discuss it, didn't apply the proper standard, and that was error? She seems to be suggesting by all accounts except for that footnote that, in fact, that's what she decided, and it might have been error, but I don't see anything where she says, I made a mistake, and even though the judgment says long-term disability benefits, I didn't actually intend to cover that in that decision. So are we not left with the fact that there is a judgment that covers long-term disability benefits that appears to be an error that we have to address? Well, I guess here is where I can certainly agree with Mr. Cantor. This is a quagmire, and it is, let me explain, not just because of what you just said, but also because the court is ruling in Willoughby 2 that as an alternative to ruling on the race judicata issue or the collateral estoppel issue, she's saying that, nonetheless, this was a separate lawsuit, that is, Willoughby 2 was a separate lawsuit seeking long-term disability benefits so that even if she didn't actually rule on long-term disability originally, she's saying it wasn't really before me and their time bar. It's a problematic group of briefings, I grant you. Well, so if she had been eligible for the short term for the entire period of time, would Aetna then, and that invalidated the grounds for denial of long-term, would that have required further findings before an eligibility for long-term could be made? In other words, this is an issue that would need to be decided in addition to the 26-week eligibility. If I'm understanding you correctly, the answer is no. What normally happens is if an individual satisfies the 26-week period because they're getting short-term disability benefits, then Aetna has determined that those individuals are in fact disabled for that 26 weeks and they're automatically eligible for the long-term disability. Now, the first two years of the long-term disability benefit have the same standard as the short-term disability. That is a person is disabled from their own occupation. Later on, there's another standard that applies after two years that certainly we're not at now. But that's that. So if Aetna had found that Ms. Willoughby remained disabled for the entire 26 weeks, there would not have been any further analysis before they provided her with a long-term disability benefits, except to ensure that she remained equally disabled. Then I don't understand the footnote because the text of the original ruling said, defendant improperly denied plaintiff's claim for short-term disability and long-term disability. Plaintiff was entitled to receive short-term disability benefits for an additional 16 weeks. And then the footnote, because plaintiff's claim for long-term disability benefits was denied on the ground that plaintiff was not eligible for long-term disability benefits, having received short-term disability benefits for only 10 weeks, as opposed to the required 26 weeks, the court makes no findings regarding plaintiff's eligibility or entitlement to long-term disability benefits. It sounds like the ruling she had made would have spelled that, so the footnote doesn't make sense. This is really, it's so unclear what happened to long-term disability benefits in this case. Counsel, I just, it's been well more than four minutes that we've continued our discussion, and even without a clock, I think we're at the end of your period of time, and I will use my current watch to look at the rebuttal time, which I believe was about four and a half minutes. Thank you. Thank you, Your Honor. I think I'd like to start by reminding the court, although the court seems well aware of it, that Judge Marshall, in the first decision back in August 2015, said the long-term disability benefits were improperly denied because the plaintiff, under de novo standard, had met the elimination period. So what does that footnote that I just read mean? Because I don't understand the footnote. Your Honor, I can't explain Judge Marshall's footnote. I don't understand it. But I would then point out, though, that... Do you agree that it seems contradictory to what's in the text? Not necessarily. I think it would be taken that she's not going to decide what happens after the 26 weeks. All she's saying is that the 26-week elimination period has been satisfied, so that Aetna has to now go forward and decide if there are continued benefits to which the plaintiff was then entitled. But I would then point out that Aetna appealed the decision and focused its appeal on the fact that the short-term benefits were self-funded and should have been dealt with under an arbitrary and capricious standard, which we don't contest. At the Ninth Circuit, the panel focused entirely on the difference between self-funded and insured. And in fact, when the decision came out, it was cited to Orszagowski nine separate times, but never dealt with it in this decision as far as what the district court should do on remand, other than rule again consistent with this order. So I think the Ninth Circuit was telling Judge Marshall, you need to rule on the long-term de novo. I think that was the mandate of this court, although maybe I shouldn't be telling this court what his mandate was. One last argument I would like to make, and I think it deals with the suggestion of a mediation. Long-term disability benefits, if paid, would have started in June 2013. It may be a cliche, but justice delayed is justice denied. Ms. Willoughby was supposed to get these benefits in order to put food on her table and a roof over her head. It'll be almost eight years. And she's still waiting. And as it's in the record, she did receive Social Security. She was found by the Social Security Administration under a far more stringent standard to be disabled as of her last day of work. And she's still receiving Social Security benefits. The equitable thing to do, and ERISA is an equitable statute, is to bring her current on her benefits, the legal issues the court can deal with. But Ms. Willoughby has waited far, far too long. And I don't wish to cast aspersions, but Aetna has come at this not as a planned fiduciary, but as a financially motivated, self-motivated insurance company. If they were looking at this as a planned fiduciary, when Judge Marshall said back in 2015, Ms. Willoughby meets de novo the elimination period, Aetna would have taken up its task and gone and investigated further beyond the 26 weeks. Thank you, counsel. I believe, according to my watch, we're at the closure of the time. I'm sorry for the glitch in our courtroom clock, but the case just argued is submitted, and we very much appreciate the helpful arguments from both counsel.
judges: Graber, Boulware, Collins